UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| SHAUNNA CHISLOCK, | ) | No. CV 09-5883-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 12, 2009, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 18, 2009, and September 25, 2009. The parties filed a Joint Stipulation on March 3, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on September 20, 1950. [Administrative Record ("AR") at 41, 109.] She has a high school education [AR at 41-42] and past relevant work experience as a secretary and administrative assistant. [AR at 149-50, 191.]

On June 13, 2007, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since September 30, 2005 [AR at 109-11], due to, among other things, cardiovascular disease, hypertension, anxiety, and hyperthyroidism. [AR at 71, 77, 148.] After plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 71-75, 77-81.] A hearing was held on February 26, 2009, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 38-66.] A vocational expert also testified. [Id.] On March 31, 2009, the ALJ issued a decision finding plaintiff not disabled. [AR at 13-36.] When the Appeals Council denied plaintiff's request for review of the hearing decision on July 13, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity since September 30, 2005, the alleged onset date of the disability.[1] [AR at 17, 32.] At step two, the ALJ concluded that plaintiff "has the following medically determinable impairments: non-severe history of Grave's disease, high blood pressure, obesity, atrial fibrillation, asthma, palpitations, right plantar fasciitis, depression[,] and anxiety." [AR at 32.] However, the ALJ found that plaintiff has no "impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months ..." [Id.] Thus, the ALJ concluded that plaintiff does not have a severe impairment or combination of impairments. [AR at 31, 32.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 31, 35.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider: (1) the opinion of treating internist Dr. Richard A. Wigod; (2) the opinion of Dr. Charles W. Scott, an examining psychologist; (3) the findings of Dr. Rosa Colonna, an examining psychologist; and (4) the findings of Dr. Lydia O. Mallare, the non-examining state agency psychiatrist. [Joint Stipulation ("JS") at 5-11.] Plaintiff

---

[1]    The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through December 31, 2011. [AR at 16, 32.]

4

argues that "[t]he ALJ's refusal to grant weight to the[se] opinions ... deprives her decision of the support of any substantial evidence." [JS at 11.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632 ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); Social Security Ruling[2] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the

---

[2] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews, 53 F.3d at 1043).

**A.    DR. WIGOD'S OPINION**

Since May 2001, treating internist Dr. Wigod has prescribed plaintiff with a daily dosage of 0.5 milligrams of Xanax for anxiety. [See, e.g., AR at 221, 234, 237, 239, 300.] In some of his treatment notes dated after the alleged onset date of plaintiff's disability, Dr. Wigod reported that plaintiff was doing "well." [AR at 217, 220-21, 301.] Dr. Wigod also mentioned that plaintiff had been surfing for exercise. [AR at 220-21.] In other treatment notes, Dr. Wigod stated that plaintiff "can't face work, people" [AR at 217], is "still stressed, can't work," "[f]atigues easily," and has "concentration ... problem[s] at times." [AR at 244.] In the most recent treatment notes, Dr. Wigod noted that plaintiff was doing "all right," "seems much less anxious and less depressed," and is "clinically stable." [AR at 329-30.]

In addition to the treatment notes, Dr. Wigod completed a questionnaire on July 20, 2007, in which he listed plaintiff's diagnoses for hypertension, hypothyroidism, hyperlipoproteinemia, chronic gastritis, chronic anxiety, and hypoestrogenism. [AR at 223.] Dr. Wigod stated that plaintiff is "anxious, easily stressed[,] and not able to handle multiple tasks at this time." [Id.] He based his conclusion that plaintiff cannot handle work stress on a "[l]ong discussion with [plaintiff] as well as [plaintiff's] detailed work history." [AR at 228.] He also estimated that plaintiff has low capacities for sitting, standing, and walking, as well as moderate limitations[3] "in a competitive 8 hour workday using the upper extremities." [AR at 225-26.] In part, he stated plaintiff's prognosis as "[f]air with continued medication." [AR at 223.] On May 3, 2008, Dr. Wigod completed an evaluation in which he listed plaintiff's diagnoses for depression, hypertension, hypothyroidism, hyperlipoproteinemia, and anxiety. [AR at 304.] Dr. Wigod opined that plaintiff "seems depressed and apathetic." [Id.] He stated that plaintiff exhibited an anxious and depressed mood and

---

[3] Moderate limitations in the July 2007 questionnaire are defined as "[s]ignificantly limited but not completely precluded." [AR at 226.]

6

showed the following: orientation in all spheres; slightly distracted concentration; above average intelligence; obsessions; and apathetic behavior disturbance. [AR at 304-06.] He also noted that plaintiff possessed "good"[4] and "fair" work-related abilities, and did not indicate that plaintiff was "poor" in any of the listed abilities. [AR at 307.] In an undated "To Whom It May Concern" letter, Dr. Wigod reported his treatment of plaintiff for hypertension, hypothyroidism, hypolipoproteinemia, hypoestrogenism, chronic gastritis, and chronic anxiety. [AR at 213.] Based on plaintiff's job history and other documents, Dr. Wigod opined in the letter that plaintiff cannot deal with any stress, and that plaintiff is permanently disabled. [Id.]

The ALJ rejected Dr. Wigod's opinion for several reasons. First, the ALJ stated that there was an inconsistency between Dr. Wigod's treatment notes and the evaluations in which he opined that plaintiff is disabled. [AR at 26-27.] Second, the ALJ found that the treatment notes fail to show that Dr. Wigod conducted an examination or evaluation of plaintiff's mental functioning. [AR at 21.] Third, the ALJ stated that Dr. Wigod does not report that plaintiff's medications are unable to control her medical problems or symptoms [AR at 24, 28], or that plaintiff's condition "must be monitored closely and frequently because of an active disease process that cannot be attenuated with treatment, because she is highly symptomatic, or because she has incapacitating functional limitations." [AR at 24.] Fourth, the ALJ noted that Dr. Wigod's treatment notes show that he has not treated plaintiff aggressively, and instead has prescribed the same type and dosage of anti-anxiety medication to plaintiff for years. [AR at 19, 25-28, citing AR at 184-91.] Fifth, the ALJ asserted that Dr. Wigod's opinion that plaintiff is disabled is conclusory and unsupported by medical evidence, in part because he failed to provide sufficient explanations for plaintiff's limitations set forth in the evaluations and the letter or for why plaintiff's condition has not improved with medical treatment. [AR at 25-26.] Sixth, the ALJ asserted that Dr. Wigod

---

[4] The May 2008 evaluation lists the following definitions for the rating terms: "good" is defined as "[t]he effects of the mental disorder do not significantly limit the individual from consistently and usefully performing the activity"; "fair" is defined as "[t]he evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described"; and "poor" is defined as "[t]he evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." [AR at 307.]

completed the evaluations solely to assist plaintiff in obtaining benefits. [AR at 27.] Lastly, the ALJ rejected Dr. Wigod's opinion because it was based purely on plaintiff's subjective complaints rather than on clinical findings or a mental status examination. [AR at 20-21, 25-27.]

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Wigod's opinion. [JS at 6.] Specifically, plaintiff argues that Dr. Wigod's failure to explain why plaintiff's condition has not been "responding ideally" to the provided treatment is irrelevant. [JS at 7.] Furthermore, plaintiff states that Dr. Wigod's opinion is not "'brief, conclusory, and inadequately supported by the clinical findings.'" [JS at 7-8, quoting AR at 26.] As stated below, the Court finds that the ALJ properly cited several reasons -- the inconsistency between the evaluations and Dr. Wigod's treatment notes regarding the extent of plaintiff's symptoms and limitations, Dr. Wigod's failure to aggressively treat plaintiff's alleged condition, and Dr. Wigod's brief and conclusory statements in the evaluations and the letter -- to discount Dr. Wigod's opinion.

First, the ALJ properly rejected Dr. Wigod's opinion because it was inconsistent with his treatment notes. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given); see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999) (a medical report's inconsistency with the overall record constitutes a legitimate reason for discounting the opinion); Matney ex rel Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (inconsistencies in a physician's opinion represents a specific and legitimate reason for rejecting it); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989) (a physician's opinion may be rejected where it is inconsistent with the physician's own treatment notes). Specifically, the ALJ found that the clinical medical evidence in the treatment notes fails to support a finding that plaintiff faces functional limitations in performing basic work activities. [AR at 21, 24-27.] The Court finds that the ALJ's conclusion is supported by substantial evidence. Here, Dr. Wigod's contemporaneous treatment notes fail to record the extent of symptoms and limitations alleged by Dr. Wigod in his July 2007 and May 2008 evaluations, or in the undated "To Whom It May Concern" letter. Rather, the treatment notes repeatedly indicate that plaintiff is doing well [AR at 217, 220-21, 301], has no complaints [AR at 242], and is clinically stable. [AR at 329.] The ALJ also correctly pointed out that according to Dr.

Wigod's treatment notes, plaintiff told Dr. Wigod that she was surfing, indicating that plaintiff is not as limited as Dr. Wigod alleged. [AR at 25, 27, 30, 35; see AR at 220-21.] It is solely within the province of the ALJ to make credibility findings and resolve conflicts in the medical evidence. See Andrews, 53 F.3d at 1041 (the ALJ is responsible for resolving conflicts in the evidence); see also Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) ("Where ... medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'") (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971)); Matney, 981 F.2d at 1019. The inconsistency between Dr. Wigod's treatment notes and the disability evaluations is a specific and legitimate reason supported by substantial evidence for the ALJ to reject Dr. Wigod's opinion.

Next, the ALJ noted that contrary to Dr. Wigod's opinion about plaintiff being unable to handle stress [AR at 213, 224, 228], his treatment notes show that Dr. Wigod has not treated plaintiff aggressively for anxiety and depression and instead has prescribed the same type and dosage of anti-anxiety medication for years. [AR at 19, 25-27, citing AR at 184-91; see also AR at 221, 234, 237, 239, 300 (Dr. Wigod's treatment notes indicating that he prescribed 0.5 milligrams of Xanax, without change, for years).] An ALJ may properly reject a treating doctor's opinion that is inconsistent with the doctor's prescribed treatment to plaintiff. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected a treating physician's opinion who prescribed conservative treatment and where the plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment). Here, the ALJ stated that if plaintiff were as limited as she alleged, Dr. Wigod "would have noticed and would have changed her medications and/or ordered more aggressive treatment." [AR at 34.] The ALJ concluded that Dr. Wigod's failure to pursue more aggressive treatment indicated his belief that plaintiff's symptoms or mental condition had not "deteriorated or changed since the time that she was working." [AR at 26.] This conclusion is supported by substantial evidence as Dr. Wigod's treatment records indicate that he consistently treated plaintiff for years with the same type and dosage of anti-anxiety medication. [See, e.g., AR at 221, 234, 237, 239, 300.] Given plaintiff's alleged condition,

Dr. Wigod's failure to alter his treatment or to prescribe more aggressive treatment is a specific and legitimate reason for rejecting his opinion.

Next, the ALJ claimed that Dr. Wigod failed to provide sufficient explanations for the limitations set forth in the evaluations and the letter. [AR at 21, 26.] Specifically, the ALJ noted that Dr. Wigod failed to explain the cause of plaintiff's limitations, the reason why the treatment is ineffective in addressing the limitations, and why the alleged limitations result from the cause. [AR at 26.] An ALJ may properly reject a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole" (Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)), or "by objective medical findings." Id.  In this case, the ALJ's rejection of Dr. Wigod's opinion as conclusory is supported by substantial evidence. As the ALJ noted, Dr. Wigod in the July 2007 questionnaire failed to fully explain plaintiff's "significant limitations in doing repetitive reaching, handling, fingering[,] or lifting ...," because he merely attributed these limitations to "general weakness." [AR at 21, see AR at 226.] Furthermore, when asked in the questionnaire to specifically explain which "emotional factors contribute to the severity of ... [plaintiff's] symptoms and functional limitations," Dr. Wigod also answered only generally that plaintiff's symptoms and limitations are attributed to stress and anxiety. [AR at 228.] As the basis for concluding that plaintiff cannot handle even low stress, Dr. Wigod cited only his discussion with plaintiff and her work history without providing further details. [Id.] Dr. Wigod also failed to provide additional reasoning regarding plaintiff's symptoms and functional limitations when given the opportunity to do so in the questionnaire. [AR at 229.] Moreover, Dr. Wigod in the May 2008 evaluation of plaintiff merely circled phrases and checked boxes pertaining to plaintiff's "abnormal findings," and left blank almost all sections providing an opportunity to comment on and to specify the findings. [AR at 304-06.] As the ALJ noted, Dr. Wigod's only comment provided on the form with regard to plaintiff's apathetic behavior was that plaintiff "seems depressed and apathetic." [AR at 23, see AR at 304.] In opining that plaintiff has slightly distracted concentration, an anxious and depressed mood, and obsessions, Dr. Wigod failed to provide any supporting comments even though the evaluation provided space for him to do so. [AR at 305-06.] Dr. Wigod also did not explain plaintiff's "progress in treatment and prognosis." [AR at 306.] Additionally, in the undated

letter, Dr. Wigod made the conclusory statement that plaintiff is "permanently disabled" due to plaintiff's inability to handle stress. [AR at 213.] In drawing his conclusion, Dr. Wigod briefly referred to plaintiff's job history and "other accompanying documents" without providing any elaboration as to why this information supported his conclusion that plaintiff is too disabled to work. [Id.] Because substantial evidence supports the ALJ's finding that Dr. Wigod's opinion in the evaluations and the letter was conclusory, this was a specific and legitimate reason for rejecting Dr. Wigod's opinion. Remand is not warranted on this issue.

**B.   DR. SCOTT'S OPINION**

Plaintiff also contends that the ALJ improperly rejected Dr. Scott's opinion. [JS at 8-9.] On September 19, 2008, examining psychologist Dr. Scott issued an assessment of plaintiff based on an interview with plaintiff, an analysis of plaintiff's medical record and personal journal, and the results of two psychological tests administered by Dr. Scott. [AR at 318-25.] Dr. Scott asserted that plaintiff's reported symptoms "cause major or marked impairment in social and occupational functioning." [AR at 319.] Dr. Scott diagnosed plaintiff with panic disorder with agoraphobia; generalized anxiety disorder; somatization disorder; and schizoid personality disorder with obsessive compulsive personality traits, avoidant personality traits, and dependent personality features. [AR at 324.] Dr. Scott also assigned a Global Assessment of Functioning ("GAF")[5] score of 55 to plaintiff, which he characterized as a "serious mental disorder." [AR at 325.] In conclusion, Dr. Scott opined that plaintiff is "unemployable and socially impaired to the point where she cannot relate to anyone due to general incompetence." [Id.]

The ALJ rejected Dr. Scott's opinion on several grounds. First, the ALJ said that it was based purely on plaintiff's "self reports and self-assessed functional limitations" rather than on a

---

[5]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score from 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers))." DSM-IV at 34.

formal mental status examination. [AR at 23-26.] Second, the ALJ also noted an inconsistency between the assessments and diagnoses of Dr. Scott and the findings of Dr. Colonna and the treatment notes of Dr. Wigod. [AR at 26-27.] Third, the ALJ assumed that plaintiff's counsel selected Dr. Scott solely to help plaintiff obtain benefits. [AR at 26.] The Court finds that the ALJ's conclusion that Dr. Scott's opinion was inconsistent with Dr. Wigod's treatment notes was a sufficient reason to reject Dr. Scott's opinion.

In order to properly reject the controverted opinion of an examining physician, the ALJ must give "'specific and legitimate reasons that are supported by substantial evidence in the record.'" Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). In this case, the ALJ properly rejected Dr. Scott's opinion based on an inconsistency between his opinion and Dr. Wigod's treatment notes. [AR at 24, 26, 27.] The ALJ specifically noted that Dr. Scott's opinion lists alleged physical symptoms that functionally limit plaintiff; however, the ALJ found that the objective record shows no uncontrolled illness, no symptoms, and no medically determinable impairment that could cause those symptoms. [AR at 24.] The ALJ also found that the record fails to support the diagnoses of somatization or schizoid disorder given by Dr. Scott. [AR at 27.] Additionally, the ALJ found that Dr. Wigod's treatment notes show "no more than mild limitations in activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation." [AR at 25.]

Indeed, Dr. Wigod's treatment notes do not show any failure to control plaintiff's physical or mental symptoms, or any diagnoses of schizoid or somatization disorder. [See AR at 217, 220-21, 301, 329-30.] To the contrary, several of his treatment notes record that plaintiff's physical exams are "o.k." and contain no changes. [AR at 241-43, 329-30.] In addition, other treatment notes indicate that plaintiff is doing "well" [AR at 217, 220-21, 301], is "clinically stable" [AR at 329], is surfing for exercise [AR at 220-21], has no complaints or additional complaints [id.], is "holding her own in general" [AR at 330], is "getting along all right" [AR at 329-30], and has not changed or increased her anxiety medication for years. [See, e.g., AR at 221, 234, 237, 239, 300.] Given the inconsistency between Dr. Scott's opinion and Dr. Wigod's treatment notes, the ALJ was responsible for resolving the conflict. "'When there is conflicting medical evidence, the Secretary

must determine credibility and resolve the conflict.'" Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002) (quoting Matney, 981 F.2d at 1019). The ALJ is also responsible for resolving any ambiguity. See Morgan, 169 F.3d at 603 (citing Andrews, 53 F.3d at 1041; Magallanes v. Bowen, 881 F.2d 747, 751, 755 (9th Cir. 1989)). In this case, because Dr. Scott's opinion was unsupported by the medical evidence, and in fact was inconsistent with the treatment records, the ALJ's rejection of his opinion was specific and legitimate and supported by substantial evidence. See Mendoza v. Astrue, 2010 WL 1141524, at *2 (9th Cir. Mar. 24, 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) ("The ALJ permissibly rejected a medical opinion of a non-treating examining physician that was unsupported by the record as a whole.") (citing Batson, 359 F.3d at 1195). Accordingly, remanded is not warranted on this issue.

**C.    DR. COLONNA'S FINDINGS**

Plaintiff also contends that the ALJ failed to give any reason for "refusing to credit" either Dr. Colonna's diagnoses of plaintiff or her assessment of a mild limitation in plaintiff's ability to handle detailed instructions. [JS at 10.] On October 11, 2007, examining psychologist Dr. Colonna conducted a complete psychological evaluation of plaintiff. [AR at 259-64.] Dr. Colonna observed that plaintiff arrived to the examination very organized with documents concerning her condition. [AR at 259.] Dr. Colonna described plaintiff's mood as "mildly dysthymic" and observed that plaintiff was unable to concentrate and started to tear up "for no apparent reason." [AR at 261.] Dr. Colonna also noted that plaintiff suffers from mildly diminished short-term memory [AR at 262], mildly diminished attention and concentration span [id.], and a mild inability to handle detailed instructions. [AR at 264.] Dr. Colonna assigned plaintiff a GAF score of 65[6] and gave her the "probable" diagnoses of anxiety disorder and "mood disorder associated with general medical condition." [AR at 263.] Dr. Colonna estimated plaintiff's cognitive ability as average [id.] and

---

[6] A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

1  noted that plaintiff can "understand, remember[,] and carry out short, simplistic instructions without
2  difficulty" and "interact appropriately with supervisors, coworkers[,] and peers." [AR at 264.]
3        The Court finds that, contrary to plaintiff's assertion that the ALJ did not credit Dr. Colonna's
4  findings, the ALJ in fact acknowledged, credited, and utilized Dr. Colonna's findings. For instance,
5  the ALJ cited Dr. Colonna's findings to discredit Dr. Scott's opinion [AR at 26-27] and to conclude
6  that plaintiff "has not, for any continuous 12 months, had a severe mental impairment." [AR at 27.]
7  The ALJ also referenced Dr. Colonna's report that plaintiff was "extremely organized" and
8  prepared at the mental status examination in stating that the report "suggests that [plaintiff] has
9  the mental and physical capacity to seek ... low cost or free treatment." [AR at 22, 28, 34.] The
10 ALJ went on to list plaintiff's activities as reported to Dr. Colonna to support the conclusion that
11 plaintiff failed to show any impairment "that significantly limits her ability to perform basic work
12 activities." [AR at 30, 35.] While the ALJ may not have expressly stated the weight she gave to
13 Dr. Colonna's diagnoses of plaintiff and assessment that plaintiff has a mild limitation in handling
14 detailed instructions [AR at 263-64; JS at 10], the ALJ was not obligated to discuss all of Dr.
15 Colonna's findings. "[I]n interpreting the evidence and developing the record, the ALJ does not
16 need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012
17 (9th Cir. 2003) (quotation and citations omitted). Rather, the ALJ was only obligated to "explain
18 why 'significant probative evidence [was] rejected.'" Vincent ex rel. Vincent v. Heckler, 739 F.2d
19 1393, 1395 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981)). In this
20 case, there is no indication that the ALJ ignored or rejected portions of Dr. Colonna's findings.
21 Because the ALJ did not reject Dr. Colonna's findings, there was no reason to expressly state the
22 weight she accorded to Dr. Colonna's diagnoses of plaintiff and her finding that plaintiff faces mild
23 limitations in handling detailed instructions. See id.
24       In any event, any error in failing to discuss certain portions of Dr. Colonna's findings was
25 harmless. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing
26 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (the theory of harmless error applies in social
27 security cases)); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (an
28 error is harmless if it is "clear from the record that an ALJ's error was 'inconsequential to the

ultimate nondisability determination'") (citation omitted). An ALJ may utilize vocational expert testimony to determine whether a claimant is able to perform substantial gainful activity by "propos[ing] a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). In this case, the ALJ posed a hypothetical question to the vocational expert asking if a person with the work related limitations provided in Dr. Colonna's evaluation (which included the mild inability to understand, remember, and carry out detailed instructions) could perform substantial gainful employment. [AR at 61-62, citing AR at 259-64.] In response, the vocational expert testified that a person with those limitations could not perform plaintiff's past work but could do unskilled jobs existing in substantial numbers in the national economy. [AR at 62, referencing AR at 60.] Because the ALJ, had she reached step five of the sequential evaluation, could have properly relied on the vocational expert's testimony, based on Dr. Colonna's findings, to find that plaintiff is not disabled, any error in the ALJ's failure to adequately discuss Dr. Colonna's findings in the decision would not have changed the ALJ's ultimate determination that plaintiff is not disabled. Accordingly, remand is not warranted on this issue.

**D.    STATE AGENCY FINDINGS**

Lastly, plaintiff contends that the ALJ provided no rationale for discrediting the state agency findings. On October 23, 2007, non-examining state agency psychiatrist Dr. Mallare completed a Mental Residual Functional Capacity[7] Assessment of plaintiff. [AR at 265-67.] Dr. Mallare concluded that plaintiff faces moderate limitations in the following areas: understanding, remembering, and carrying out detailed instructions [AR at 265]; maintaining "attention and concentration for extended periods" [id.]; performing "at a consistent pace" [AR at 266]; and completing "a normal workday and workweek without interruptions from psychologically based

---

[7] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

symptoms." [Id.] Dr. Mallare also stated that among other things, plaintiff's abilities to understand, remember, and carry out "very short and simple instructions," "sustain an ordinary routine without special supervision," "make simple work-related decisions," and interact and work with others, are not significantly limited. [AR at 265-66.] Dr. Mallare concluded that plaintiff "has adequate mental function to perform [simple repetitive tasks]." [AR at 267.]

The ALJ accurately acknowledged the state agency findings [AR at 23], and ultimately determined that plaintiff is not disabled. [AR at 31.] SSR 96-6p specifically requires that the ALJ's final decision explain the weight given to the opinions of state agency consultants. See SSR 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and "[a]dministrative law judges ... may not ignore these opinions and must explain the weight given to these opinions in their decisions."). In this case, even if the ALJ erred in failing to explain the precise weight given to the state agency findings in the decision, any such error was harmless. At the hearing, the ALJ posed a hypothetical to the vocational expert accurately describing plaintiff's condition according to the state agency physician's findings that plaintiff has certain moderate limitations and has "adequate mental function to perform simple, repetitive tasks ..." [AR at 60, citing AR at 265-67, 308-09.] In response to this hypothetical, the vocational expert testified that plaintiff could still do unskilled work. [AR at 60.] Since plaintiff would still not be disabled even if the ALJ credited the state agency findings, the Court finds that any such error in failing to address the specific weight given to these findings was harmless. See Osenbrock, 240 F.3d at 1163. Accordingly, remand is not warranted on this issue.

/
/
/
/
/

## VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 14, 2010

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE